IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA BRENNAN,<br>　　　　　　**Plaintiff,**<br><br>　　　　　v.<br><br>FIVE BELOW, INC.,<br>　　　　　　**Defendant.** | CIVIL ACTION<br><br><br><br><br>NO.  22-1383 |

**HODGE, J.**                                                                                                   **MARCH 13, 2025**

<u>**MEMORANDUM**</u>

　　　　This is an employment discrimination case arising from Plaintiff Jessica Brennan's termination by her employer, Defendant Five Below, two weeks before she planned to take maternity leave. Five Below maintains that Brennan, a former Buyer for Defendant, was terminated as part of a reorganization within her department in response to the COVID-19 pandemic. Five Below also asserts that Plaintiff was selected for termination—the sole member of her team to be fired—because she was the poorest performing Buyer on her team. Five Below now moves for summary judgment on Plaintiff's Title VII, Pennsylvania Human Relations Act ("PHRA"), Philadelphia Fair Practices Ordinance ("PFPO" or the "Philadelphia Ordinance"), and Family Medical Leave Act ("FMLA") claims. For the following reasons, Five Below's Motion for Summary Judgment is denied.

　　**I.　　BACKGROUND**

　　　　Plaintiff Jessica Brennan worked at Five Below from April 2017 to May 19, 2020, when she was terminated during a restructuring of the Merchandising Group. (ECF No. 17-3 ¶ 1.)[1] The Merchandising Group is led by Chief Merchandising Officer ("CMO") Michael Romanko. (*Id.* ¶

---

[1] 　　The Court adopts the pagination supplied by the CM/ECF docketing system.

1

8.) Romanko directly supervised Senior Vice Presidents/General Merchandising Managers ("GMM") Idalia Farrajota and Tod Morehead. (*Id.*)

When Brennan was hired, she was the Buyer in charge of Health Beauty Aid ("HBA") and reported to Vice President/Divisional Merchandising Manager ("VP/DMM") Christi Priestly. (ECF No. 17-3 ¶ 22.) Buyers are responsible for "deliver[ing] the sales and profit plan" for the specific products they work with. (ECF No. 17-1 at 169.) Among their responsibilities are identifying and marketing products, financial planning, timely ordering and overseeing products, communicating effectively with their team members, and developing and maintaining relationships with vendors. (*Id.* at 169-70.) Plaintiff testified that throughout her tenure at Five Below, she believed she performed well, as evidenced by positive feedback and performance evaluations, discretionary merit bonuses and pay increases, and the receipt of an award. (ECF No. 23-6, 32:2-17; 57:14-20.) Five Below disputes that Brennan ever received a discretionary merit bonus, and states that rather, she received "standard bonuses" based on "overall company performance". (ECF No. 24 at 3.) However, it is undisputed that until her termination, Plaintiff was never told that she had any performance issues, nor was she ever placed on a performance improvement plan. (ECF No. 23-6, 56:15-21; ECF No. 23-7, 113:14-115:8, 236:5-8; ECF No. 23-9, 18:16-19; ECF No. 23-10, 52:22-53:7.)

Around June or July 2019, Priestly decided to move Brennan out of HBA and into a role as a Basic Accessories Buyer (also referred to as a Fashion Basics Buyer). (ECF No. 17-1 at 196-97, 15:23-16:22.) Priestly testified that she moved Brennan into a new role because she "wanted Jessica to be successful," and that moving her into the new role would "set her up for success because she did have a good eye for fashion and [basic accessories] was just more consistent." (ECF No. 17-1 at 201, 38:2-3; 38:15-17.) This was also reflected in a transition plan Priestly

drafted in June 2019, in which she wrote that Plaintiff would be "taking on the new role that has been created in Accessories," "due [to] our ever changing and evolving business." (ECF No. 17-1 at 206.) Priestly wrote that Brennan would "benefit from a business that is consistent and focused," and that Brennan's "[c]onstant communication with the vendor base is key." (*Id.*)

Defendant now states that Priestly "did not believe Plaintiff was performing well." (ECF No. 17-3 ¶ 24.) However, Plaintiff testified that Priestly always told her, and wrote in her performance reviews, that she was doing a good job in her role, and that Plaintiff was never told of any issues with her performance that Priestly may have written in notes to others at Five Below. (ECF No. 17-1 at 153, 100:20-21; *Id.* at 154, 104:6-10.)

In September 2019, following her transfer to the Fashion Basics department, Brennan began reporting directly to General Merchandising Manager Idalia Farrajota. (ECF No. 17-1 at 38, 89:9-24.) Five Below asserts that Farrajota "had concerns about Plaintiff's performance." (ECF No. 17-1 ¶ 36.) In support of this, Defendant points to Farrajota's deposition testimony, in which she stated that she believed Plaintiff to be her "worst performer," and that she "was not able to perform her duties the way the expectations that we needed to, for her to do her job." (ECF No. 17-1 at 53, 120:4-13; *Id.* at 79, 228:5-7.) Farrajota testified that Plaintiff missed deadlines, had poor communication with vendors, and was unable to lead the Associate Buyer beneath her.. (ECF No. 17-3 ¶¶ 38-40.) Farrajota also testified that she never provided Plaintiff with written performance feedback. (ECF No. 17-1 at 39, 94:6-12.)

In or around January 2020, following a difficult fourth quarter for Five Below in 2019, the Merchandising Group began evaluating its structure and considering ways to be more financially responsible. (ECF No. 17-1 at 19, 21:6–22:24; at 22, 25:13-16.) Headcount reduction was

3

discussed, but no decisions were made to reduce the number of people in the Merchandising Group. (*Id*.)

In March 2020, the Merchandising Group did engage in a reorganization. (ECF No. 17-1 at 162.) During the Merchandising Group restructuring, Plaintiff was terminated, two Buyer positions were consolidated, one Buyer was transferred out of the Merchandising Group, and two Associate Buyers were promoted to Buyers. (ECF No. 17-1 at 24-25, 31:16–32:22.) Plaintiff was the only Buyer terminated during the reorganization. (*Id.* at 62, 142:6-8.) Plaintiff's responsibilities were reassigned to Amanda Pavlik, who had been a buyer in Apparel. (*Id.* at 249.) Brennan had been earning approximately $100,000 in her role; when Pavlik took over she earned about $120,000. (ECF No. 23-7, 39:8-13.) Associate Buyer Lynn Haley took over Pavlik's role, and later in 2020 Five Below hired a new employee to take over some of Haley's old role. (ECF No. 17-1 at 164.)

Plaintiff was terminated on May 19, 2020. (ECF No. 17-1 at 9 ¶ 28.) Farrajota was the sole decision-maker with respect to Brennan's termination. (ECF No. 23-7, 71:3-6.) Farrajota testified that she considered demoting Plaintiff from Buyer to Associate Buyer, but ultimately did not do so because she did not believe Plaintiff would accept the demotion or "perform well in the reduced role." (ECF No. 17-3 ¶ 66.) During the termination meeting between Plaintiff, Farrajota, and HR Director Dennis Lattman, Brennan was told she was being terminated because of a Merchandising Group restructuring, not her performance. (ECF No. 17-1 at 72-75, 202:22–203:9, 204:13–205:4.) Plaintiff stated that her termination made no sense, and was told her position was being eliminated. (ECF No. 23-6, 80:15-23; 82:5-8 Up to that point, Plaintiff had never had a conversation with anyone at Five Below regarding performance issues, nor was she ever placed on a performance

4

improvement plan. (ECF No. 23-6, 57:16-20.) When she was terminated, Lattman told Plaintiff that her firing was unrelated to her performance and that she was re-hirable. (*Id.*)

In December 2019, Plaintiff had announced to her colleagues that she was pregnant. Farrajota testified that she believed Plaintiff was due in September 2020—more than nine months after Plaintiff announced her pregnancy. (ECF No. 17-1 at 88, 248:5-7.) In fact, Plaintiff was due in June 2020, and gave birth on June 3, 2020, 15 days after her termination. (ECF No. 23-6, 135:5-9.) When Farrajota was asked if the fact that Plaintiff was pregnant and anticipating maternity leave entered her mind when determining who to let go, Farrajota replied, "It might have." (ECF No. 23-7, 223:13-24.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). This requirement

upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)). Therefore, if after making all reasonable inferences in favor of the non-moving party, the court determines there is no genuine dispute as to any material fact, then summary judgment is appropriate. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

### III. DISCUSSION

#### A. Pregnancy Discrimination under Title VII and the PHRA

Title VII prohibits employers from failing to hire, discharging, or otherwise discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended Title VII to state that discrimination on the basis of sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Because the analysis required for adjudicating Plaintiff's Title VII and PHRA claims is identical, the Court will consider those two claims together. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317, n. 3 (3d Cir.2000).

In the absence of direct evidence of discrimination, the Supreme Court has set out a framework to analyze claims of pregnancy discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 802. If the plaintiff establishes a prima facie case of discrimination, a "presumption" of discrimination is created and the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 802–03. In order for defendants to sustain this burden, they "need not persuade the

6

court that [the adverse employment action] was actually motivated by the proffered reasons." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The defendant satisfies its burden of production, and rebuts the plaintiff's prima facie showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). The inquiry concerning whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily precedes the credibility-assessment stage." *Id.*

If the employer meets its burden of production, the presumption of discrimination created by plaintiff's prima facie case "drops out of the picture." *Id.* at 511 (citing *McDonnell Douglas*). In order to establish that the defendant is liable for illegal employment discrimination, the plaintiff must ultimately convince the trier of fact that a discriminatory animus was the real reason for the adverse employment action at issue. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994).

**1. Brennan establishes her prima facie case of pregnancy discrimination.**

To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate that (1) "she is or was pregnant and that her employer knew she was pregnant," (2) "she was qualified for her job," (3) "she suffered an adverse employment decision," and (4) "there is some nexus between her pregnancy and her employment termination that would permit a fact-finder to infer unlawful discrimination." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008).

Five Below concedes the first three prongs of the analysis, and challenges only the fourth prong, arguing there is no nexus between Plaintiff's pregnancy and her termination. (ECF No. 17-2 at 17.) Because Brennan informed Five Below of her pregnancy in December 2019, and was not terminated until May 2020, Defendant argues there is no temporal proximity between the

disclosure of her pregnancy and her termination. (*Id.*) Nor has Plaintiff offered evidence of any negative comments made about her pregnancy by anyone at Five Below. (*Id.*)

Here, Brennan informed her colleagues at Five Below that she was pregnant in December, but she was due to give birth and take maternity leave in June 2020. She was terminated on May 19, 2020—less than a month before her due date. The Court finds this timing to be "unusually suggestive" of discrimination. *See Budhun*, 765 F.3d at 258. By Defendant's reasoning, an employer who learned of an employee's pregnancy months before she was due could simply wait until right before her due date to fire her, because it had been several months since the pregnancy announcement. The temporal proximity between the termination and the planned leave is just as telling as would be an employee who was fired as soon as she announced her pregnancy.

In addition, despite Defendant's claims that the Merchandising Group restructuring was necessary because of financial strife, Plaintiff, the only pregnant employee in the Merchandising Group at that time, was the only Buyer fired during the restructuring. In addition, Brennan's role was actually filled by an employee from another department who had never been a Buyer, Amanda Pavlick. (ECF No. 23-2 ¶ 58.) Moreover, the parties agree that Brennan was told that her termination was due to the restructuring and *not* her performance. ECF No. 17-1 at 72-75, 202:22–203:9, 204:13–205:4.) These facts about the reason for Plaintiff's termination are material and, taken in the light most favorable to Brennan, establish a plausible nexus between her pregnancy and her termination. Additionally, the fact that when asked, Brennan's supervisor Farrajota stated that the fact Plaintiff was pregnant and anticipating maternity leave "might have" entered her mind when determining who to let go, also suggests a nexus between Plaintiff's pregnancy and termination. Therefore, Plaintiff has established a prima facie case of discrimination.

8

### 2. Five Below articulates a legitimate, non-discriminatory reason for Brennan's termination.

The Plaintiff having established her prima facie showing of discrimination, the burden then shifts back to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *See McDonnell Douglas*, 411 U.S. at 802. This burden is relatively light. Wh*itmire v. Kvaerner Philadelphia Shipyard*, 340 F. App'x 94, 97 (3d Cir. 2009) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).) To do so, the employer must demonstrate "evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes* 32 F.3d at 763.

Five Below has offered sufficient evidence of a legitimate non-discriminatory reason for Brennan's termination. First, it is undisputed that there was a restructuring of the Merchandising Group as a result of poor financial performance the prior year. Five Below states that Farrajota deemed Plaintiff the worst performer on her team, and as a result, she was the obvious choice when determining who to fire. Five Below also offers evidence from other Five Below employees which they claim shows that Plaintiff was performing poorly throughout much of her time at Five Below. (*See, e.g.*, ECF No. 17-1 at 217, 222, 225-26, 228-33.) Taken as true, this is enough for Five Below to establish a legitimate, non-discriminatory reason for Plaintiff's termination.

### 3. A reasonable factfinding could find that Five Below's reasoning is pretext for discrimination.

Because Five Below has established a legitimate, non-discriminatory reason for Brennan's termination, the burden shifts back to Brennan to establish that this legitimate reason is simply pretext for Defendant's alleged discrimination. *McDonnell Douglas*, 411 U.S. at 804. At the summary judgment stage, a plaintiff can establish pretext by pointing "to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

This Court has determined that Brennan has offered sufficient evidence for a reasonable factfinder to find that Five Below's proffered reasons for her termination are pretextual. Five Below offers examples of communications among Five Below employees that it contends are evidence of Plaintiff's allegedly poor performance, including emails between Farrajota and others. (*See, e.g.*, ECF No. 17-1 at 217 (email from E. Corrie to Plaintiff stating that Corrie is "increasingly concerned" about a past due order); ECF 17-1 at 222 (email from E. Corrie to Plaintiff saying Corrie is still concerned about "the open to place in Q1 in Fashion Basics"; email from N. Agrio to Farrajota stating that "[t]he team is behind on placing orders."); ECF No. 17-1 at 225-26 (email from E. Corrie to N. Agrio that "there continue to be a lot of issues in the Fashion Basics OO," and that Corrie is "recapping the issues to Jess"); ECF No. 17-1 at 228-33 (emails between Fashion Basics team on which Plaintiff is copied, detailing order issues).)

Other than post-hoc deposition testimony of Brennan's poor performance, these emails are the only evidence Five Below offers to prove Brennan's performance issues. Notably, not one of these emails states with specificity anything Plaintiff was doing wrong in her role. The emails are largely focused on failures of the entire Fashion Basics team. When Plaintiff is mentioned at all, the emails simply say she was told of the issues, not that she was responsible for them. Nor was Brennan ever informed of her supposed poor performance, either verbally or through a written performance review (positive or negative), until her termination two weeks before her scheduled maternity leave. Five Below has put forward no contemporaneous evidence that suggests that Brennan did not do her job well. The Court also agrees with Plaintiff's argument that the opinions

10

of employees who were not decision-makers as to Plaintiff's termination are irrelevant to the analysis here. (*See* ECF No. 23 at 20-21); *see also Fuentes*, 32 F.3d at 767 (noting that whether a plaintiff can show pretext depends on the actions of the relevant decision-maker.)

Lastly, Plaintiff also points to testimony from Farrajota who, when asked if Brennan's pregnancy impacted the decision to terminate her, responded that "[i]t might have." (ECF No. 23-7, 223:13-24.) While this statement may not be enough to prevent Defendant from offering a legitimate no-discriminatory reason for Brennan's termination, it is enough to create a genuine dispute of fact as to the reason Brennan was fired.

Because Brennan has shown a genuine dispute of material fact as to her pregnancy discrimination and PHRA claims, summary judgment is denied.

**B. FMLA Retaliation**

"FMLA retaliation claims based on circumstantial evidence are governed by the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (citing *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir.2012)). To succeed on her FMLA retaliation claim[2], Brennan must first establish a prima facie case by showing that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Id.* (citing *Lichtenstein,* 691 F.3d at 302). Once she has made this prima facie showing, the burden shifts to Five Below to provide evidence of a legitimate, non-discriminatory reason for the adverse action. If Defendant meets this burden, Brennan must show some evidence that these legitimate, non-discriminatory reasons are pretextual. *Id.* The facts

---

[2] Defendants correctly note that Plaintiff's complaint did not specify whether she was putting forth her FMLA claim under a theory of interference or retaliation, and Defendant's Motion for Summary Judgment addresses both. However, in her response to the Motion for Summary Judgment, Plaintiff clarified that she was only asserting an FMLA retaliation claim, thus, the Court only analyzes that claim. (*See* ECF No. 23 at 21.)

regarding Plaintiff's pregnancy discrimination claim and FMLA retaliation claim overlap substantially, therefore, both parties' arguments about FMLA retaliation are almost identical to their arguments about the pregnancy discrimination claim. Unsurprisingly, the Court's analysis of this claim is also quite similar to that of Brennan's pregnancy discrimination claim.

### 1. Brennan establishes her prima facie case of pregnancy discrimination.

Five Below argues that Brennan cannot establish a prima facie case of FMLA retaliation, because the timing between her termination and protected activity is not "unusually suggestive." (ECF No. 17-2 at 29, citing *Donnelly v. Cap. Vision Servs., LLC*, 2022 WL 17486361 at *8.) Five Below states that "there was no close proximity between either Plaintiff's disclosure of her pregnancy (which occurred five months before her termination) or her supervisor's belief as to her due date/start of FMLA leave (which was four months after her termination)." (ECF No. 17-2 at 29.)

Plaintiff asserts that she has established a prima facie case of FMLA retaliation, pointing to evidence including that she had received promotions and pay increases during her tenure, she had never received negative performance feedback until she alleged pregnancy discrimination, she was never put on a performance improvement plan, and she was the only pregnant employee terminated out of the entire Merchandising Group. (ECF No. 23 at 13-14.) Plaintiff also notes that despite being told her position was being eliminated due to cost-cutting, Five Below was giving other employees bonuses and pay increases; and Defendant replaced Plaintiff with an employee who was paid 20% more than she was. (*Id.* at 14.) Plaintiff was terminated 15 days before she gave birth and would have initiated FMLA leave. (*Id.*)

For the same reasons Five Below's argument about a lack of temporal proximity is unconvincing with respect to Brennan's pregnancy discrimination claim, the Court is not

convinced here. It is true that Brennan announced her pregnancy in December 2019, but she was due to take maternity leave in June 2020, and was fired just weeks before her leave in May 2020. (ECF No. 17-1 at 9 ¶ 28.) The length of time between the adverse action, her termination, and her scheduled leave is close enough that the Court considers it "unusually suggestive." *See Budhun*, 765 F.3d at 258 (3d Cir. 2014) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007)).

Despite Five Below telling Brennan she was being terminated due to the need for cost-cutting, she was the only buyer fired, and her position was filled by an employee who was paid 20% more than she. (*See* ECF No. 23-1 ¶ 9.) Brennan was also told her firing was in no way performance related, yet now, Five Below attempts to paint her as a consistently underperforming employee. These facts are sufficient to cast doubt on Five Below's proffered reasons for terminating Brennan.

Five Below's argument that Farrajota believed Plaintiff's leave to be scheduled for September is even more dubious. (ECF No. 17-2 at 29.) September 2020 would be more than nine months after Brennan announced her pregnancy to her colleagues in December 2019. For her leave to be scheduled in September, Brennan would have had to announce her pregnancy immediately after she became pregnant.. Assuming Farrajota believed Brennan's leave was scheduled for September, she should have understood that this belief was illogical at best, if not incredible. Plaintiff has met her burden to establish a prima facie case of FMLA retaliation.

**2. Five Below articulates a legitimate, non-discriminatory reason for Brennan's termination.**

Once Plaintiff has shown her prima facie case, the burden shifts back to Defendant to prove a legitimate reason for her termination. The legitimate reason Defendants offer as to Plaintiff's FMLA retaliation claim is the same as that for the pregnancy discrimination claim—Five Below

13

was experiencing financial strife and restructuring its Merchandising Group, and Plaintiff was identified as a poorly-performing employee within that Group, therefore, it was logical to terminate her. (ECF No. 17-2 at 30; ECF No. 17-2 at 18.) For the same reasons as previously articulated, the Court accepts this as a legitimate, non-discriminatory reason for Plaintiff's termination. *See, supra* III.A.2.

### 3. Brennan can show that Five Below's reasoning is pretext for retaliation.

The burden now shifts back to Brennan to show that Five Below's proffered reason for her termination is in fact pretext for retaliation for her taking FMLA leave. *See Budhun*, 765 F.3d at 256. Brennan offers the same facts as those in her prima facie argument, namely, that she was terminated just weeks before she planned to take FMLA leave, and had never been told of her poor performance prior to alleging a pregnancy discrimination claim. (ECF No. 23 at 23.)

Five Below offers the same argument against pretext as it does against the prima facie argument—that Brennan has not shown a causal connection between her termination and her request for FMLA leave. The Court has already addressed this argument, *see supra* III.B.1, and sees no need to repeat its analysis. For the same reasons as stated with respect to Brennan's prima facie case for FMLA retaliation, Brennan has shown a genuine dispute of fact as to whether she was terminated as a result of her planned FMLA leave, thus, summary judgment is denied as to her FMLA claim.

### C. Philadelphia Fair Practices Ordinance (PFPO) Claim

In addition to her state-level PHRA claim, Brennan seeks to bring a claim under the PFPO, a local Philadelphia ordinance. Five Below also argues that 1) Brennan failed to exhaust administrative remedies on her PFPO claim, and 2) because she chose to pursue a PHRA claim on the same facts, her PFPO claim is now barred. (ECF No. 17-2 at 30.) Brennan filed a complaint

with the Pennsylvania Human Relations Commission ("PHRC" or the "Pennsylvania Commission"), and her complaint was also cross-filed with the Equal Employment Opportunities Commission ("EEOC"). (ECF No. 1 ¶ 16.) The EEOC granted Brennan a right to sue letter on January 31, 2022. (*Id.* ¶ 17.) Plaintiff asserts that she has satisfied all administrative requirements to bring her PFPO claim. . (*Id.* ¶ 18.)

In support of its argument that Brennan failed to exhaust her PFPO claim, Five Below cites to *Smith v. RB Distribution, Inc.*, in which Judge McHugh, who sits in this District, noted that a plaintiff seeking to bring a PFPO claim "may only exercise a private right of action after invoking the [City] Commission's procedures and receiving notice from the [City] Commission." 498 F. Supp 645, 665 (citing Phila. Code § 9-1122). Defendant also points to Eastern District of Pennsylvania Judge Wolson's opinion in *Lee v. Bey*, granting Defendant summary judgment on its PFPO claim where the Plaintiff had not filed a complaint with the Philadelphia Commission on Human Relations (the "City Commission"). *See* 2023 WL 1971209, at *3 (E.D. Pa. Feb. 13, 2023).

In response, Brennan points to the opinions of Eastern District of Pennsylvania Judges Kearney and Baylson, who have reached the opposite conclusions of Judges McHugh and Wolson on the issue of PFPO exhaustion. *See Vandegrift v. City of Philadelphia*, 228 F. Supp. 3d 464, 482 (E.D. Pa. 2017); *Newsome v. City of Philadelphia*, 2021 WL 2810289, at *4 (E.D. Pa. July 6, 2021). Both Judges Kearney and Baylson held that the Philadelphia Ordinance is ambiguous as to whether a plaintiff may satisfy the PFPO's exhaustion requirement by filing a complaint with the Pennsylvania Commission, but that an interpretation of the language of the Philadelphia Ordinance leads to the conclusion that a plaintiff *should* be able to do so. *Vandegrift*, 228 F. Supp at 482; *Newsome*, 2021 WL 2810289, at *4. The Supreme Court of Pennsylvania has yet to address this specific issue.

Noting the divergence in opinion among colleagues and respecting the decisions of those who have addressed this issue in this District, this Court agrees that until the Pennsylvania Supreme Court, the Third Circuit, or the Philadelphia City Council states otherwise, the Philadelphia Ordinance should be read to allow a plaintiff to administratively exhaust his or her PFPO claim through filing a complaint with the Pennsylvania Commission or the EEOC. In its reading of the text, the Court agrees that the PFPO is ambiguous—indeed, there would not be so much divergence in the past decisions of this Court if the language was clear. In light of the ambiguity, the Court sees the need to look at the context of the text and the intention of the ordinance.

There is a conflict between the Philadelphia Ordinance language that "The Commission shall not accept a complaint from any person who has filed a complaint with the Pennsylvania Human Relations Commission with respect to the same grievance," Phila. Code § 9-1112(4), and the provision stating that "Nothing in this Chapter limits the right of an injured person to recover damages under any other applicable law or legal theory." Phila. Code § 9-1122(5). From this conflict a question presents itself: Does the language of the ordinance mean that a complainant who files first with the Philadelphia Commission and then with the Pennsylvania Commission may proceed with both claims, but someone who does the opposite is barred from asserting a PFPO claim? The Court does not believe that the Philadelphia City Council in crafting this ordinance intended such an outcome which would result in unfairness. The City Council created the PFPO to increase access to justice for individuals who have reportedly experienced discrimination, not to limit or close the door on individuals who may be reasonably confused or ill-informed about where to file their complaint first, and what the consequences might be in terms of access to redress if they file in one venue before another. Plaintiff filed with the PHRC and the EEOC, thus, it is

16

this Court's determination that she has properly exhausted the administrative requirements to bring her PFPO claim here.

For these reasons, Defendant's summary judgment motion as to Plaintiff's PFPO claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant Five Below's Motion for Summary Judgment is denied in its entirety. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**